IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

VIVIAN GRIFFIN                                                                               PLAINTIFF

VS.                                                               CIVIL ACTION NO. 3:13cv35-DPJ-FKB

CAROLYN W. COLVIN,
ACTING COMMISSIONER
OF SOCIAL SECURITY                                                                        DEFENDANT

**REPORT AND RECOMMENDATION**

Vivian Griffin brought this action to obtain judicial review of a final decision of the Commissioner of the Social Security Administration. Having considered the memoranda of the parties and the administrative record, the undersigned recommends that the decision of the Commissioner be affirmed.

**I. Procedural History and Administrative Record**

Griffin was born on January 12, 1965. She has a tenth grade education and obtained a GED. Her past relevant work experience is as a babysitter, cashier, and cook. Griffin filed for a period of disability, disability insurance benefits (DIB), and supplemental security income (SSI) on January 4, 2011, alleging disability beginning July 1, 2008, as a result of problems with her legs, knees, feet, left hand, back, and hip, as well as asthma, nerves and depression. Her applications were denied initially and on reconsideration, and she requested and was granted a hearing before an administrative law judge (ALJ). On December 20, 2011, the ALJ issued a decision dismissing Griffin's DIB claim and denying SSI benefits. The Appeals Council denied review, thereby making the decision of the ALJ

the final decision of the Commissioner.  Griffin then brought this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).  In her appeal, Griffin challenges only the ALJ's denial of her SSI claim.[1]

Griffin's medical record is notable for frequent complaints of joint pain.  On February 12, 2009, she presented at the University of Mississippi Medical Center (UMMC) emergency room complaining of pain and weakness in her left hip.  (R. 229-30).[2]  She was noted to walk with a moderate limp.  Upon examination Griffin had limited range of motion in all directions and tenderness over the hip joint.  An x-ray of the left hip revealed severe arthritic changes with marked narrowing of the joint space superiorly with periarticular sclerosis and osteophyte formation.  (R. 227).  She was prescribed Ultram. (R. 230).  In October of 2010m she presented to the UMMC emergency room complaining of back pain.  (R. 232-33).  An x-ray of the lumbar spine was normal. (R. 245).  She was treated with Keterolac and hydrocodone.  (R. 233).

In April of 2011, Griffin began treatment at Hinds Behavioral Health.[3]  At her initial visit, she reported sadness with crying spells, depressed mood, being easily angered and frustrated, irregular appetite, and difficulties sleeping.  (R. 287-90).  Impression was Axis I, mood disorder NOS; Axis II, no diagnosis; Axis III, arthritis, hypertension, and broken

---

[1]A prior DIB claim filed by Griffin was denied in July of 2009.  Because Griffin's date last insured was prior to that denial, the ALJ dismissed the subsequent DIB claim on the basis of res judicata.  Griffin does not challenge that dismissal.

[2]Citations reflect the original pagination of the administrative record.

[3]Initial evaluation notes describe her as a "re-admit," indicating a history of prior treatment at the clinic.  (R. 287).

2

arms as a child; Axis IV, chronic pain and moderate stressors; and Axis V, a GAF of 55.[4] (R. 290).  She was prescribed Paxil.  A psychiatric evaluation was performed on June 14, 2011, by Dr. Fawaz Abdrabbo.  (R. 294-96).  Griffin's chief complaints were sleep problems, depression, and crying.  Upon examination, Griffin's speech was coherent with normal rate and tone, and affect was appropriate; memory and concentration were good.  She denied any active auditory or visual hallucinations, but reported that she had experienced these off and on for the past four years.  Insight and judgment were good, except for a history of substance abuse, and intelligence was average.  Diagnosis was Axis I, Depressive disorder NOS for a few years with a history of noncompliance with treatment, and a history of substance abuse; Axis II, deferred; Axis III, history of asthma, arthritis, and hypertension, with normal blood pressure at the exam; Axis IV, applying for disability, and Axis V, a GAF of 65.  Treatment notes from July 26, 2011, indicate that she was experiencing some improvement in mood and energy level on Paxil.  (R. 293).  In September 2011, she reported sleep problems, low energy, low appetite and depressed mood; trazodone was added to aid her sleep. (R. 291).

From June through October of 2011, Griffin received primary care at the Jackson Hinds Comprehensive Health Care (Jackson Hinds).  Treatment notes indicate that she presented on numerous occasions with complaints of leg pain, knee pain, thigh pain, difficulty ambulating, pain and swelling in the hand, neck pain, back pain, and occasional

---

[4]The Global Assessment of Functioning (GAF) is a standard measurement of an individual's overall level of functioning on a scale of 1-100, with 100 representing "superior functioning."  American Psychiatric Institute, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 34 (4th ed. 2000).  The GAF is the Axis V segment of the DSM's multiaxial system for assessment.

3

numbness and tingling in her finger tips. (R. 255-78). Her diagnoses were multiple arthralgias, asthma, hypertension, and depression. (R. 255-78). Medications prescribed included diclofenac sodium, Flexeril, Paxil, and trazodone.

Nona Owens, Ph.D., performed a post-hearing consultative mental status examination on November 4, 2011. (R. 297-99). Dr. Owens observed that Griffin was neat, appeared to have taken care in her appearance, and maintained good eye contact. (R. 298). Griffin displayed no abnormality in psychomotor activity. (R. 298). Speech was normal in rate, rhythm, and volume, and affect was normal, although Griffin shed a few tears when talking about her father's death. (R. 298). Thoughts were for the most part logical and coherent. (R. 298). Griffin alleged that she heard voices and saw visions, but the examiner questioned the reliability of these allegations. (R. 298). During the examination, Griffin endorsed three out of three symptoms suggestive of malingering. (R. 298). Recent and remote memory were good. (R. 298). Griffin was able to perform multiplication and addition, could spell "world" forward, and showed a good fund of general information. (R. 298). She was able to interpret one of three proverbs. (R. 298). Dr. Owens estimated her intelligence to be in the low average range. (R. 298). Impression was R/O depressive disorder NOS and R/O malingering. (R. 298).

A post-hearing consultative physical examination was performed by Dr. Parvesh Goel on November 11, 2011. Dr. Goel's impression was (1) lumbar spondylosis; (2) cervical spondylosis; (3) asthma; (4) hypertension; (5) depression and anxiety; and (6) gastro-intestinal reflux disease. (R. 305). He opined that Griffin could stand no more than ten minutes without disruption, sit no more than thirty minutes without interruption,

4

and walk half a block. (R. 305). Dr. Goel observed that her sight, hearing and speaking were normal, and he stated that she was capable of avoiding danger and driving a motor vehicle. (R. 305).

At the hearing, Griffin testified that she suffers from problems with her legs, knees, back and hand, from bad nerves, and from depression. (R. 40). She stated that she is unable to drive because her feet "lock up" on her. (R. 44). Griffin lives alone, does not socialize, and seldom leaves her house, except to accompany her daughter grocery shopping. (R. 42-44). At the grocery store, she uses an electronic cart to get around. (R. 42). She is able to take care of her personal needs, although her daughter helps her with her hair. (R. 42-43). Her household tasks are limited to heating up meals in the microwave, doing laundry, and occasionally sweeping the floor. (R. 43). Otherwise, household chores are performed by her daughter, who visits her daily. (R. 44, 47-48). Griffin's daily activities consist primarily of sitting at home and watching television. (R. 42). During the day she elevates her legs for two to three hours for pain relief. (R. 55). Griffin sleeps approximately three to four hours a night. (R. 54). She described herself as suffering from anger problems and stated that she cries every day. (R. 60). Griffin estimated that she could lift ten to twelve pounds, sit for three or four hours a day, and stand for a total of an hour in a day. (R. 45-46). She can climb six to seven stairs at a slow pace and would be exhausted after walking 25 yards. (R. 51-52).

A vocational expert (VE) testified at the hearing. The ALJ posed the following hypothetical to the vocational expert and asked about such a person's ability to work: An individual of Griffin's age, education, and work experience, who could lift ten pounds

frequently and twenty pounds occasionally, and who could stand or walk for four hours and sit for six hours in an eight-hour day. (R. 64-65). The VE testified that such a person could not perform any of Griffin's past relevant work, but that she could perform the sedentary jobs of lens inserter, surveillance systems monitor, and order clerk for food and beverage, all of which exist in significant numbers in the national economy. (R. 65).

In his second hypothetical, the ALJ described the same individual except that she would be required to elevate her legs for two to three hours a day. (R. 65). The VE opined that such a person could perform the position of surveillance systems monitor but not the other jobs. (R. 65-69).

Griffin's attorney posed a hypothetical in which he asked about an individual having the same description as that in the ALJ's first hypothetical, except that she would be unable to stay on task for two-hour segments because of concentration problems resulting from pain. (R. 69-70). The VE testified that there were no jobs such an individual could perform. (R. 70).

## II. **The Decision of the ALJ and Analysis**

In his decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[5] He found that Griffin has the severe impairments of arthritic

---

[5]In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

(1)  whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

(2)  whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

6

changes of the left hip and hypertension. (R. 13). He concluded that Griffin's lumbar spondylosis, cervical spondylosis, asthma, gastrointestinal reflux disease, and depression were non-severe. (R. 13). The ALJ found Griffin does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 14). In considering Griffin's subjective complaints, the ALJ found that they were not credible to the extent alleged. (R. 15-16). The ALJ found that Griffin has the residual functional capacity to perform light work as defined by 20 C.F.R. § 416.967(b), with the limitation that she can stand or walk only four hours in an eight-hour workday and can sit only six hours. (R. 15). At step four the ALJ determined that Griffin is unable to perform her past relevant work. (R. 15-17). Relying upon the testimony of the vocational expert, the ALJ determined that Griffin can perform alternative work and is therefore not disabled. (R. 18-19).

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and

---

(3) whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

(4) whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

(5) whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. §§ 404.1520, 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[6] In her memorandum, Griffin makes two arguments: (1) That the ALJ erred in failing to hold a supplemental hearing; and (2) that the ALJ's finding as to Griffin's RFC is not supported by substantial evidence.

*Failure to grant Griffin's request for a supplemental hearing.* At the hearing, the ALJ granted Griffin's motion for post-hearing consultative physical and mental exams. (R. 75). Section I-2-7-30 of the *Hearings, Appeals and Litigation Law Manual* (HALLEX) provides that when evidence is acquired after the hearing, it must be proffered to the claimant, unless the claimant has waived his or her right to examine it, or unless the ALJ intends to issue a fully favorable decision. The rule further provides that the proffer letter must give the claimant time to object to, refute, or comment on the additional evidence, or to request a supplemental hearing. If the claimant requests a supplemental hearing, the request must be granted, unless the additional evidence supports a fully favorable decision. In the present case, Griffin's counsel exercised his right to comment on the post-hearing evidence and to request a supplemental hearing. (R. 209). Nevertheless, the ALJ issued his decision without granting the hearing request.

---

[6] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)). If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is *against* the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

HALLEX does not carry the authority of law. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000) (citing *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)). Nevertheless, if a claimant is prejudiced by a violation of HALLEX procedures, "the result cannot stand." *Id.* Griffin argues that she suffered prejudice because she was denied the opportunity to examine the VE in light of the opinions of the consultative examiners. Her letter requesting the hearing indicates that she specifically desired to pose hypotheticals to the VE incorporating the limitations found by Dr. Goel. (R. 209). Griffin has not, however, explained how such questioning could have made it more likely that she would have received a favorable decision. The ALJ stated that he accorded very little weight to the opinion of Dr. Goel concerning Griffin's functional limitations, and the RFC found by the ALJ as set forth in his opinion is the same as that incorporated into his first hypothetical to the VE at the hearing. Stated otherwise, Dr. Goel's post-hearing opinion appears to have had no effect on the ALJ's determination of Griffin's RFC. Griffin has not shown how questioning the VE about Dr. Goel's opinion could have caused the ALJ to give it more weight. Because Griffin has not established prejudice resulting from the denial of the supplemental hearing, remand is not warranted.

*Residual Functional Capacity*. Griffin contends that the ALJ's determination as to her RFC was not based upon substantial evidence. The focus of this argument is the ALJ's reliance upon the opinion of Dr. Owens. The relevant portion of the ALJ's opinion is as follows:

> The medical records simply fail to confirm the accuracy of the claimant's assertions and hearing testimony. The undersigned initially observes that . . . . Dr. Owens opined that the claimant had malingered during her psychiatric examinations in November 2011. Dr. Owens specifically opined that the

9

> claimant endorsed three out of three symptoms suggestive of malingering and that there was a question of the reliability of the information provided by the claimant. For example, the claimant initially told Dr. Owens that she lived alone; yet later explained how her daughter and two-year old granddaughter were in and out. While the claimant has alleged having problems with her hands, it was noted that her nails were manicured. Dr. Owens also reported that the claimant endorsed symptoms that were used when malingering was suspected and that her responses to questions reinforced the possibility of malingering. For example, although the claimant reported that she preferred to be alone, she also reported that she had friends visit her. She also reported that she heard voices or her baby sister, and that she saw things when she stood up cooking.

(R. 15-16). The ALJ goes on to state that he gives considerable weight to Dr. Owens's opinion concerning Griffin's malingering. (R. 16).

Griffin argues that Dr. Owens's opinion does not provide substantial evidence for the ALJ's findings that Griffin was not credible and that she did not suffer from a severe mental impairment. She points to Dr. Owens's comments about inconsistencies as to whether she lived alone and the comments concerning Griffin's hands and manicured nails and states that they are an insufficient basis upon which to base a finding that Griffin was not credible. The undersigned agrees that these portions of Dr. Owens's report, standing alone, would probably not constitute substantial evidence on this point. But Dr. Owens's report provides other, much stronger evidence of malingering, specifically, Griffin's responses to questions posed for the purpose of identifying malingering and her statements regarding hallucinations and voices. Dr. Owens's opinion as a whole provides substantial evidence to support the ALJ's findings as to Griffin's credibility and the severity of her mental impairment.

That Griffin has undergone brief treatment for depression at Hinds Behavioral does not undermine this result. The ALJ properly and carefully considered Griffin's mental

impairment pursuant to the technique[7] and concluded that it was non-severe.  In summary, the ALJ's finding is supported by substantial evidence.

### III.  Conclusion

For the reasons stated herein, the undersigned recommends that Griffin's motion be denied, that the Commissioner's motion be granted, and that the decision of the Commissioner be affirmed.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C.

---

[7]The regulations set forth a specific method, commonly referred to as the "technique," for determining the severity of a mental impairment.  *See* 20 C.F.R. § 416.920a.  The technique requires the ALJ to rate the degree of functional loss resulting from the impairment in four areas that are considered to be essential to work:  (1) Activities of daily living, (2) social functioning, (3) concentration, persistence or pace, and (4) episodes of  deterioration or decompensation in work or work-like settings.  For numbers (1), (2), and (3), the rating of limitation is to be done on a five-point scale of none, mild, moderate, marked and extreme.  For number (4), a four-point scale of none, one or two, three, and four or more is to be used.  Generally, the conclusion that the impairment is not severe results if the ratings of limitation are none or mild in the first three areas and none in the fourth area.  On the other hand, ratings in the last point for each area represent a degree of limitation which is considered to be incompatible with the ability to work.  20 C.F.R. § 416.920a.  In the present case, the ALJ rated Griffin's limitations as follows: mild limitations in activities of daily living, mild limitations in social functioning, mild limitations in concentration, persistence, or pace, and no episodes of deterioration or decompensation.   (R. 14).

§ 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

  Respectfully submitted, this the 21st day of January, 2014.

              /s/ F. Keith Ball
              UNITED STATES MAGISTRATE JUDGE